# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ALEASE SABRINA PRATT,         )
                              )
           Plaintiff,         )
                              )
    v.                        )        1:13CV320
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social )
Security,                     )
                              )
           Defendant.         )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Alease Sabrina Pratt, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (See Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 11, 14). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## PROCEDURAL HISTORY

Plaintiff applied for SSI, alleging a disability onset date of April 1, 2010. (Tr. 208-11.) Upon denial of that application initially (Tr. 70-81, 116-24) and on reconsideration (Tr. 82-95, 126-35), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 125). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 31-66.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 15-26.) The Appeals Council thereafter denied Plaintiff's request for review, thus making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since May 12, 2010, the application date.
>
> 2. [Plaintiff] has the following severe impairments: degenerative disc disease (DDD), sarcoidosis, diabetes mellitus, carpal tunnel syndrome (CTS), essential hypertension, obesity, major depressive disorder (MDD), and a history of substance abuse/addiction disorder (both drug and alcohol).
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with the following additional limitations: pushing-pulling at the light level; no climbing of ladders, ropes, or scaffolds; no more than occasional balancing and climbing ramps and stairs; no more than frequent stooping, crouching, kneeling, and crawling; no more than frequent[] handling and fingering; no exposure to moving machinery, unprotected heights, and poorly ventilated areas; must avoid concentrated exposure to irritants (such as fumes,

2

odors, dust, and gases); can only perform simple, routine, repetitive tasks, in a low-stress job (defined as having no more than occasional decision-making required and no more than occasional changes in the work setting); no production rate or paced work (such as would be done on an assembly line); and no more than occasional interaction with the public and co-workers.

. . .

5.   [Plaintiff] is capable of performing past relevant work as a housekeeping cleaner.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

6.   [Plaintiff] has not been under a disability, as defined in the . . . Act, since May 12, 2010, the date the application was filed.

(Tr. 20-26 (internal parenthetical citations omitted).)[1]

**DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given those limitations, the Court should remand this case for further administrative proceedings.

---

[1] Alternatively, the ALJ relied on the testimony of the VE (see Tr. 63) to find at step five of the SEP that Plaintiff could perform the unskilled, sedentary jobs of addresser, sorter, and almond blancher, all existing in significant numbers in the national economy (see Tr. 25-26).

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a

---

[2] The Act "comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

7

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ committed error by failing to give controlling weight to the opinions of [treating physician] Dr. Paul Tawney" (Docket Entry 12 at 2);

(2) "[t]he ALJ erred in failing to re-contact Dr. Tawney . . . [because] there was at worst a conflict between Dr. Tawney's MSS and his treating notes" (id. at 9); and

(3) "[t]he ALJ's reasons for discrediting [Plaintiff] regarding her back pain do not support his credibility finding" (id. at 10).

Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 15 at 5-15.)

**Treating Physician's Opinions**

Plaintiff first argues that the ALJ should have assigned controlling weight to the opinions of her treating physician, Dr. Tawney, reflected on a "Medical Source Statement - Physical" ("MSS") Dr. Tawney completed on September 29, 2011. (Docket Entry

---

at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

12 at 2, 5 (citing Tr. 610-14).)[6]  According to Plaintiff, Dr. Tawney's MSS equates to a "stat[ement] that because of severe low back pain, sacroiliac pain, sciatica, and degenerative disc disease, [Plaintiff] was disabled."  (Id. at 5 (citing Tr. 610).) Plaintiff further asserts that, although "[t]he ALJ stated that Dr. Tawney's opinion was 'inconsistent with the medical evidence of record, which shows only conservative treatment and significant improvement with such treatment'" (id. (citing Tr. 24)), "[t]he ALJ did not specify any inconsistencies between Dr. Tawney's opinion and the medical record," which constituted "reversible error" (id. (citing Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011), Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004), Richards v. Astrue, No. 1:12-cv-832, 2012 WL 7006345, at *10 (N.D. Ohio Dec. 17, 2012) (unpublished), Ward v. Astrue, No. 3:10-cv-1031-J-MCR, 2012 WL 695702, at *6 (M.D. Fla. Mar. 5, 2012) (unpublished), Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003))).

Plaintiff also challenges the ALJ's observations that Plaintiff underwent "only conservative treatment" and that treatment led to "significant improvement" (id. at 7 (citing Tr.

---

[6] Plaintiff provides the date of the MSS as "September 29, 2011" (Docket Entry 12 at 5), and Defendant describes the date as "July 2011" (Docket Entry 15 at 5).  Indeed, the numeral representing the month in the date on the MSS appears to reflect the number "9" marked over by the number "7."  (Tr. 615.)  The Court need not resolve this ambiguity, however, as no doubt exists that the ALJ considered the MSS prior to issuing his decision.  (See Tr. 24.)

9

23)), because a transcutaneous electrical nerve stimulation ("TENS") unit, physical therapy, steroid injections, and medications such as Neurontin and Zanaflex constitute "*aggressive* treatment" (id. (emphasis in original) (citing Jenkins v. Astrue, No. 5:08-CV-248-D(3), 2009 WL 122762, at *8 (E.D.N.C. Jan. 16, 2009) (unpublished))), and any relief Plaintiff obtained from such treatment "did not last" (id.). Plaintiff additionally contends that Dr. Tawney's opinions harmonized with the opinions of consultative examiner, Dr. Shannon Ellis (id. at 8 (citing Tr. 377-78)), that only the opinions of the non-examining state agency consultants conflicted with Dr. Tawney's opinions, and that their opinions "cannot be persuasive because they did not have the benefit of Dr. Tawney's opinion, nor . . . his vantage point as a treating physician" (id.). Plaintiff's contentions warrant relief.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating

10

source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. 20 C.F.R. § 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).[7]

---

[7] Plaintiff asserts that "rejection of the treating physician's opinion must be based on 'persuasive contradictory evidence,'" citing Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). (Docket Entry 12 at 3.) However, Plaintiff's phrasing of the "treating physician rule" as including the "persuasive contradictory evidence" language no longer represents the governing standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) (expressly rejecting "persuasive contradictory evidence" standard and noting that "[t]he 1991 regulations supersede[d] the 'treating physician rule' from our prior case law"); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) (observing that, "[a]s regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to [the 1991] regulations are not controlling" (internal citation omitted)); Brown v. Astrue, Civil Action No. CBD10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished) (deeming "persuasive contradictory evidence" a "defunct legal standard" in light of 1991 regulations); Benton v. Astrue, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished) (holding that 1991 regulation "supersedes any prior Fourth Circuit's common law treating physician rule that is contrary to it"); Winford v. Chater, 917 F.Supp. 398, 400 (E.D. Va. 1996) (finding "persuasive contrary evidence . . . the wrong legal standard"); Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996) (recognizing that 1991 regulations supersede "persuasive contradictory evidence" standard). The fact that, in Johnson, the Fourth Circuit stated that an ALJ could discredit treating physician opinion in light of "persuasive contrary evidence," Johnson, 434 F.3d at 654 n.5, does not mean (as Plaintiff suggests) that any rejection of such

11

In this case, Dr. Tawney opined on the MSS that Plaintiff suffered from "low back pain, sacroiliac pain, sciatica, and degenerative disc [disease]" (Tr. 610) and that, as a result of those impairments, Plaintiff could sit for one hour at a time and for a total of three hours in a work day, could stand and walk for less than 15 minutes at a time and for two hours total in a work day, and could lift and carry 20 pounds occasionally and ten pounds frequently (Tr. 611-12). In addition, Dr. Tawney noted that Plaintiff's medications caused "drowsiness" and "dizziness" (Tr. 611), and that Plaintiff would miss work three days per month (Tr. 614). Dr. Tawney concluded that Plaintiff's impairments had "persisted with the restrictions as outlined in [the MSS] at least since . . . [April 1, 2010]." (Tr. 615.)

Here, after discussing Dr. Tawney's opinions on the MSS, the ALJ described the weight he assigned to those opinions in one sentence: "I give little weight to this opinion, as it is inconsistent with the medical evidence of record, which shows only conservative treatment and significant improvement with such treatment." (Tr. 24.) However, the ALJ did not, either in his analysis of Dr. Tawney's opinions (see id.) or at any other point

---

opinion "<u>must</u> be based on 'persuasive contradictory evidence'" (Docket Entry 12 at 3 (emphasis added)). See, e.g. Craig, 76 F.3d at 590 (recognizing that, if treating source's opinion "is not supported by clinical evidence <u>or</u> it is inconsistent with other <u>substantial</u> evidence, it should be accorded significantly less weight" (emphasis added)).

12

in his decision (see Tr. 20-26), cite to substantial evidence demonstrating "conservative treatment" for or "significant improvement" in Plaintiff's lower back and leg symptoms.[8]

Regarding conservative treatment, the ALJ acknowledged only that Plaintiff's treatment for her back and leg pain included "medication, [a] TENS unit, and injections." (Tr. 23.) The record actually substantiates that, in response to Plaintiff's repeated complaints of back and leg pain, Dr. Tawney ordered physical therapy on at least two occasions (both aquatic and non-aquatic) (see Tr. 414, 417, 419-20, 426), prescribed Zanaflex, Lidoderm patches, and Neurontin (gabapentin) (see Tr. 412, 417, 426),[9] administered both transforaminal and sacroiliac injections (see Tr. 408, 412, 523, 527), procured a TENS unit for Plaintiff (see Tr. 420), and referred Plaintiff to a pain management clinic (see Tr. 521). Under comparable circumstances, this Court has required explanation as to why a combination of such measures taken to alleviate pain represents "conservative treatment":

---

[8] The ALJ confined his discussion of the medical evidence to one paragraph that lacked any citations to particular medical records. (See Tr. 23.) Instead, at the conclusion of that paragraph, the ALJ provided one generic string cite to all of the medical record exhibits. (Id.)

[9] "[N]eurontin/gabapentin [is] an anticonvulsant used to treat nerve pain . . . ." Fonseca v. Astrue, No. EDCV10-470MAN, 2011 WL 2412627, at *4 (C.D. Cal. June 10, 2011) (unpublished); see also McClesky v. Astrue, 606 F.3d 351, 352 (7th Cir. 2010) (labeling Neurontin a "powerful and expensive drug[] that many people are reluctant to take"); In re Neurontin Mktg., Sales Practices, and Prods. Liab. Litig., 612 F. Supp. 2d 116, 137 (D. Mass. 2009) (discussing federal government study "establishing an association between Neurontin and suicidality").

13

> [T]he ALJ failed to explain why he termed Plaintiff's treatment for his back conditions after the alleged onset date "generally routine and conservative," when the record from that period (as noted by the ALJ) reflected that: 1) Plaintiff underwent repeated lysis of adhesions of his lumbar spine and lumbar and cervical ne[rve] blocks; and 2) Plaintiff took prescriptions of Lorcet, Endocet, Percocet, oxycodone, and Neurontin.
>
> Given the invasive and extensive character of the spinal injection therapies endured by Plaintiff, as well as the powerful and dangerous nature of his prescriptions, the Court should not affirm the characterization of his treatment as "generally routine and conservative," without further explanation by the ALJ. See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (questioning whether "regimen of powerful pain medications and injections can constitute 'conservative treatment'"); Grisel v. Colvin, No. CV13-623JPR, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (unpublished) (noting that "treatment with narcotic pain relievers has generally been found to be nonconservative when combined with . . . steroid or epidural injections").

Kelso v. Colvin, No. 1:12CV331, 2012 WL 3748640, at *8 (M.D.N.C. Jul. 30, 2014) (unpublished) (internal quotations and citations omitted), recommendation adopted, slip op. (M.D.N.C. Aug. 25, 2014) (Eagles, J.).[10] Thus, the ALJ's undeveloped characterization of Plaintiff's treatment for her lower back and leg pain as "conservative" does not constitute a valid basis to discount Dr. Tawney's opinions.

---

[10] Plaintiff's reliance on Jenkins, 2009 WL 122762, at *8 (see Docket Entry 12 at 7), misses the mark. In Jenkins, the court merely quoted portions of the ALJ's decision in which the ALJ characterized treatment such as "steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program," as "aggressive." (Id.) The court did not discuss, much less hold, that such measures amounted to "aggressive treatment." (Id.)

14

Moreover, Dr. Tawney's records do not show "significant improvement" in Plaintiff's lower back and leg pain with the above-described treatment. As a general matter, Dr. Tawney's treatment records reflect that Plaintiff frequently complained of either no improvement or worsening in her lower back and leg pain, regardless of the treatment she underwent. (See Tr. 415 ("no change"), 411 ("mild worsening"), 505 ("mild worsening"), 519 ("severe worsening"), 525 ("mild worsening").) More specifically, Plaintiff reported to Dr. Tawney (and to the ALJ at the hearing) that she could not endure physical therapy secondary to pain. (See Tr. 45, 415.) Further, although Plaintiff initially informed Dr. Tawney that her TENS unit did help to reduce her pain (see Tr. 415), the unit malfunctioned a few months later (see Tr. 525), and the record does not reflect that a TENS unit was successfully employed at any point thereafter (see Tr. 522, 571). Finally, although the sacroiliac injections initially resulted in "marked improvement" in Plaintiff's back pain (Tr. 408; see also Tr. 505), she denied that they helped her leg pain (see id.), and her back pain soon returned, eventually reaching 10 out of 10 in intensity on the pain scale (see Tr. 519). In short, substantial evidence fails to support the ALJ's finding that Plaintiff's lower back and leg pain "significantly improve[d]" (Tr. 24), and thus this finding cannot constitute a basis for affording "little weight" to Dr. Tawney's opinions (id.).

15

Plaintiff contends that the consistency of Dr. Tawney's opinions with the opinions of consultative examiner Dr. Ellis provides further support for Dr. Tawney's opinions. (See Docket Entry 12 at 8 (citing Tr. 377-78).) Both physicians essentially agree with regard to Plaintiff's abilities to stand, walk, lift, and carry (compare Tr. 378, with Tr. 612), and differ only in the total amount of time that Plaintiff can sit in an eight-hour work day (compare Tr. 378 (six hours), with Tr. 612 (three hours). Thus, Dr. Ellis' opinions do provide some support for Dr. Tawney's opinions. Rather than recognizing this consistency, however, the ALJ assigned "little weight" to Dr. Ellis' opinions for the same reason that he discounted Dr. Tawney's, i.e., that the opinions "[are] inconsistent with the medical evidence of record, which shows only conservative treatment and significant improvement with such treatment" (Tr. 24), reasons which, as discussed above, substantial evidence fails to support.[11]

---

[11] Plaintiff additionally argues that only the opinions of the non-examining state agency consultants conflicted with Dr. Tawney's opinions, and that their opinions "cannot be persuasive because they did not have the benefit of Dr. Tawney's opinion, nor . . . his vantage point as a treating physician." (Docket Entry 12 at 8.) Controlling and persuasive precedent, however, makes clear that the consistency of state agency consultants' opinions with the record as a whole, including those records post-dating such opinions, constitutes the proper focus of the inquiry. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (ALJs may rely on the opinions of non-examining physicians when such opinions find consistency with the whole of the record); Thacker v. Astrue, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) (unpublished) ("The fact that the state agency physician did not have access to the entire evidentiary record — because the record was incomplete at the time of the assessment — is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination."); Bryant v. Astrue, No. 3:08CV719, 2009 WL 6093969, at *9 & n.11 (E.D. Va. July 15, 2009) (unpublished) (affirming ALJ's decision to give non-examining state agency consultants'

Defendant argues that the ALJ's discussion of Plaintiff's "mildly impaired" activities of daily living also supported his decision to discount Dr. Tawney's opinions. (Docket Entry 15 at 9 (citing Tr. 21, 24).) However, the ALJ discussed Plaintiff's activities of daily living not as support for assigning "little weight" to Dr. Tawney's opinions (Tr. 24), but in the context of his analysis of whether Plaintiff's mental impairments met or equaled the criteria of any listed impairments (see Tr. 21), and then again, briefly, when evaluating Plaintiff's credibility with regards to her alleged "social isolation" (Tr. 24 ("[Plaintiff] reports social isolation, but recently noted to her counselor that she participates in 'pleasurable activities in the community with family and friends' (which I note is consistent with a third-party report of [Plaintiff's] activities of daily living).")). The Court cannot consider post-hoc rationalizations. See Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, C.J.) (citing Securities & Exch. Comm'n v.

---

assessments great weight as "consistent with the actual medical findings and conservative treatment of the claimant's treating physicians, and with [the claimant's] admitted activities of daily living" even though such consultants "did not have the opportunity to observe the claimant or the opportunity to consider additional evidence submitted subsequent to their review of the record"); Bracey v. Astrue, No. 5:07-CV-265-FL, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (unpublished) (finding no error in ALJ's reliance on state agency consultants' opinions where "treatment notes and clinical findings . . . submitted after the [consultants's] assessments indicate[d] similar complaints and assessments as those reviewed by the . . . consultants" and noting that the ALJ considered the additional evidence, which did "not demonstrate a marked change for the worse in [the] plaintiff's health"). In any event, the ALJ clearly did not find the state agency consultants' opinions "persuasive" and afforded "little weight" to those opinions. (Tr. 24.)

17

Chenery Corp., 332 U.S. 194 (1947)). To the contrary, Chenery limits the Court to reviewing the rationalizations initially put forth by an administrative agency. Id.

The ALJ's unsupported discounting of Dr. Tawney's opinions takes on even more significance in this case, because the ALJ discounted all of the medical opinions of record. (See Tr. 24 (assigning "little weight" to the opinions of Dr. Tawney, consultative examiner Dr. Ellis, and the state agency consultants).) The absence of any credited medical opinion regarding Plaintiff's remaining ability to perform basic work-related activities complicates the reviewing court's ability to trace the ALJ's reasoning concerning Plaintiff's RFC. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must build an accurate and logical bridge from the evidence to his [or her] conclusion."); see also Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) ("[T]he duty of explanation will be satisfied when the ALJ presents '[a reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))).

18

Furthermore, the ALJ's failure to properly support his decision to discount Dr. Tawney's opinions does not constitute harmless error. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). Here, Dr. Tawney's opinions regarding Plaintiff's maximum abilities to sit, stand, and walk in an eight-hour work day restrict Plaintiff to less than a full range of even sedentary work (see Tr. 612),[12] and would preclude her from performing her past relevant work as a housekeeper, as well as all of the jobs cited by the VE and relied upon by the ALJ in his alternative step five finding. Thus, clearly, reevaluation of Dr. Tawney's opinions could lead to a different outcome in this case.

In sum, the ALJ committed reversible error in his evaluation of Dr. Tawney's opinions. In light of the recommendation to remand

---

[12] The regulations define sedentary work as "involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (1983).

this case, and the fact that, upon remand, the ALJ will reassess Dr. Tawney's opinions (and therefore also Plaintiff's credibility and the RFC), the Court need not consider Plaintiff's remaining two issues on review involving the ALJ's duty to recontact Dr. Tawney and the assessment of Plaintiff's credibility. If Plaintiff believes that information in Dr. Tawney's treatment notes remains important, she may pursue that matter administratively.

## **CONCLUSION**

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include reevaluation of the opinions of Plaintiff's treating physician, Dr. Tawney. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) should be granted in part (i.e., to the extent that it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 17, 2015